Mary PEMBERTON,
Petitioner–Appellant,

v.

Donald PEMBERTON,
Respondent–Respondent.

No. 54064.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 13, 1988.

David W. Suddarth, Troy, for petitioner-appellant.

Thomas B. Burkemper, Troy, for respondent-respondent.

REINHARD, Judge.

Wife appeals from that portion of a dissolution decree limiting the court's award of $250 per week maintenance to a period of one year. We reverse and remand.

The parties were married on May 22, 1982; they separated on April 16, 1987. Wife's age was 45; husband's age was 52. No children were born of the marriage. After a hearing on October 1, 1987, the court entered its decree on October 26, 1987.

Wife testified that prior to the marriage she was employed as a bartender and housekeeper. She stopped bartending after the marriage at her husband's request. Just prior to trial she had undergone surgery for carpal tunnel syndrome. She said she suffered from diabetes, high blood pressure, and a nervous disorder. During the two years preceding the dissolution, wife was admitted to the emergency room for treatment of her diabetes on 22 separate occasions, having suffered from blackouts. Some of these occasions involved automobile accidents.

Wife lost her two latest jobs because she frequently lost consciousness. At the time of trial, she had a part time job earning $80 to $100 per month working 6 hours per week for Home Health Care Agencies. Wife introduced numerous hospital records

pertaining to her various illnesses. Also received into evidence was a social security administration decision from September 1986 finding her disabled, but denying her benefits because she did not have enough quarters of eligibility. The decision included references by the administrative law judge to testimony from a psychiatrist indicating that wife's "anxiety and depression were related to the management of the diabetes mellitus as well as the multiple marital and family problems ... [and that] the prognosis was good if she received psychotherapy ..." The only medical witness who testified at trial was Suzanne J. Stours, RN, a psychiatric clinical specialist. She testified that she recommended wife enter a stress management program at St. Joseph's Hospital in St. Charles. However, wife had not done so. The court sustained husband's objection to the wife's counsel's question of whether or not, with this type of help, wife would be able to hold gainful employment.

Husband testified that when they married wife was making a living by tending bar and cleaning houses. After they were married, he did not want her to tend bar, so she stopped. He was "very pleased" with the way she kept house. The transcript reveals the following colloquy between wife's counsel and husband:

Q. Have you heard the testimony of your wife about her many illnesses?

A. Yes, sir.

Q. Do you believe she is sick?

A. Yes.

Q. ... Alright, you really don't believe she can work full time and hold a job like you could going everyday?

A. No, sir, she could not.

Q. You believe she is disabled also, just being around?

A. She is.

Husband worked at McDonald Douglas Corporation and earned an income in excess of $37,000 in 1986. Wife had expenses in excess of $1,000 per month and husband's expenses, apart from wife's maintenance, were between $1,500 and $2,000 per month.[1]

In dissolving the marriage the court made the following findings:

Petitioner was working at two different employments, as an employee of a bar, and cleaning homes. The Court finds that Petitioner is presently suffering from diabetes, high blood pressure, recovery from Carpal Tunnel Syndrome surgery, and a stress condition which presently limits her to some extent. The Court finds there is available treatment for the stress condition and that one of the reasons for the stress is the marital situation between the parties. The Court finds that once the divorce has been granted, *Petitioner will have a better chance of employment because some causes of her stress will be alleviated.*

The Court finds that Respondent admitted to drinking a minimum of a twelve-pack of beer per week and smoking an excessive amount of cigarettes in and about the marital home. The Court finds the Petitioner underwent a religious conversion approximately two years ago, and from that time forward, complained excessively about the husband drinking and smoking. While Respondent's drinking and excessive smoking is not condoned, the Court does find that Petitioner's excessive complaining was the primary cause of the marital breakdown herein.

. . . .

The Court finds Petitioner is presently in need of rehabilitative maintenance, . . . .

(Emphasis ours.)

The court then made the following order:

3. Respondent shall pay to Petitioner the sum of Two Hundred Fifty Dollars ($250.00) per week as and for maintenance, the first such payment being due on October 30, 1987, and subsequent payments being due on the same day of each week thereafter for a period of one year

---

1. We note a computational error on husband's expense statement. Not only did he include mortgage and installment contract expenses—he included those figures twice to arrive at monthly expenses of $2,390.

from the date of first payment, at which time Respondent's obligation for maintenance shall cease.

The court also made disposition of various items of personal property, both separate and marital. The court ordered the marital home sold with the net proceeds to be distributed to the husband. However, the court permitted the wife to remain in the home until time of sale so long as she made the mortgage payments.

The only issue presented on appeal is whether the trial court erred in limiting its maintenance award to a period of one year. Wife cites to us numerous cases from the appellate courts of this state wherein awards of limited maintenance have been reversed. Those cases reveal that for an award of limited maintenance to stand there must be "substantial evidence at the time [of the decree] to justify imposition of the limitation." *Hutchins v. Hutchins*, 687 S.W.2d 703, 706 (Mo.App.1985) (*quoting Doerflinger v. Doerflinger*, 646 S.W.2d 798, 802 (Mo. banc 1983)). Implicit in such a limitation is the notion that the spouse receiving maintenance will become self-supporting at the end of the limitation period. *Turner v. Turner*, 650 S.W.2d 662, 664 (Mo.App. 1983). Consequently, "there should be evidence of some impending change in the financial conditions of the parties or at least some reasonable expectation that such a change will occur." *In re Marriage of Powers*, 527 S.W.2d 949, 956 (Mo.App. 1975).

The trial court's determination to limit maintenance cannot be based on guess work and speculation. *Id.* at 956. But if there is a rational basis to support the court's determination, then an award of limited maintenance should stand. *Sansone v. Sansone*, 615 S.W.2d 670, 671 (Mo. App.1981).

Wife argues based upon the above principles that there is no substantial evidence to support the limitation of maintenance to a

period of one year and that such determination is based upon guess work and speculation.

Husband argues there was substantial evidence in the record to support an outright denial of award of maintenance. Thus, according to husband, the trial court had a rational basis to limit maintenance. He also argues that wife failed to prove her future inability to work, relying on, among others, the case of *Abney v. Abney*, 575 S.W.2d 842, 844 (Mo.App.1978).

In *Abney* the husband appealed an award of $100 per month maintenance, arguing that such award was improper in light of the fact that even though the wife had physical disabilities, she continued to be fully employed; therefore, maintenance was not justified. We held in *Abney* that the *McBane*[2] extension of the considerations for maintenance becomes applicable only when the potential for future disability is established by evidence exceeding mere guesswork or speculation. We then explained that there was not the requisite medical evidence relating to potential future incapacity to satisfy the *McBane* consideration. We concluded that in order to justify an award of nominal maintenance, thereby keeping the issue open, there had to be evidence of a "substantial potentiality" of future disability.

The circumstances in this case are not the same as those in *Abney* and the other cases on which husband relies. Unlike the situation in *Abney*, the wife in this case had a disability precluding her from being fully employed and self-supporting at the time the decree was entered. Thus we need not decide whether there is a substantial potentiality of disability in the future; we know now that wife was, in fact, disabled at the time of the decree. The only question is whether there was substantial evidence that the wife would be self-supporting at the end of the one year period.

Husband argues there was substantial evidence supporting an outright denial of

---

**2.** *McBane v. McBane*, 553 S.W.2d 521, 524 (Mo. App.1977), held that where "the evidence shows a physical condition existing at the time of the marriage dissolution which has a substantial

potentiality for disabling the wife from remaining self-supporting, fairness to the wife requires that her existing physical condition be taken into account." *Id.*

maintenance, and that *a fortiori*, there was substantial evidence supporting an award of limited duration. This contention is without merit. Husband's testimony alone supports the conclusion that wife's many illnesses prevented her from working at the time of the dissolution. When this testimony is considered along with wife's testimony and exhibits, there is no question that wife established her right to maintenance under § 452.335.1, RSMo 1986.

Husband next argues that the evidence adduced at the hearing was sufficient to justify the court's limited award. He relies primarily on the opinion of a psychiatrist referred to in the administrative law judge's decision finding wife disabled. The psychiatrist thought that wife's depression and anxiety were related to the management of her diabetes and her marital and family problems. The psychiatrist believed wife's prognosis was good if she received psychotherapy. Husband also relies on wife's testimony wherein she related that her doctor advised her that her blood pressure and diabetes would be easier to control if she undertook psychiatric treatment. Finally, husband relies on the testimony of wife's witness, Suzanne Stours, recommending that wife enter a stress management program.[3]

■ We note that both parties rely heavily on the social security disability determination. However, this determination is not binding on the trial court. It was rendered approximately one year before the trial of this case, and the psychiatrist's examination, on which the decision relies, was made nearly a year and a half before the trial.

We do not believe that the evidence husband cites in support of the limited award satisfies the standards we have frequently articulated. Our cases require substantial evidence that the spouse receiving maintenance will become employed and self-supporting at the end of the limitation period. We do not believe that evidence of possible

treatment for wife's psychological illness, alone, satisfies this standard.

■ While we have on numerous occasions simply reversed awards of limited maintenance, or modified the award to remove the limitation, we believe the trial court in this case may have been influenced in the amount of its award by the fact that the award was for a limited duration. Thus we remand the case to the trial court for a redetermination of the amount of maintenance.

REVERSED AND REMANDED.

CRANDALL, P.J., and CRIST, J., concur.

---

3. The case of *Royal v. Royal,* 617 S.W.2d 615 (Mo.App.1981) involved facts somewhat similar to those in the case at bar. The court there held

the evidence insufficient to support a limitation on an award of maintenance.