**LAND IMPROVEMENT,
INC., Appellant,**

v.

**John H. FERGUSON and Jack W.
Isley, Respondents.**

**Nos. WD 43066, WD 43137.**

Missouri Court of Appeals,
Western District.

Dec. 11, 1990.

Rodger J. Walsh, Independence, for appellant.

E. Wayne Taff, Kansas City, for respondents.

Before BERREY, P.J., and FENNER and ULRICH, JJ.

BERREY, Presiding Judge.

This is an action in which plaintiff, Land Improvement, Inc., sought to recover money damages against defendants, John Ferguson and Jack Isley. Ferguson and Isley counterclaimed against Land Improvement. Both the petition and counterclaims were tried together. On November 20, 1989, the court entered judgment in favor of Land Improvement in the amount of $77,492 after offset. The court ruled against Ferguson and Isley on their counterclaims. Respondents timely filed an authorized after trial motion, in this case a motion to amend the judgment. On February 20, 1990, the court amended its judgment, awarding judgment to Land Improvement in the amount of $3,220 and ordering Ferguson and Isley to specifically perform their contract with appellant by conveying two and one-half acres of land to plaintiff. The court reaffirmed its judgment as to the counterclaims. Both sides appeal from the judgment and these appeals have been consolidated. Land Improvement claims that the trial court erred in amending the money judgment to one of specific performance because specific performance was never pled and the judgment did not give a legal description of the acreage in question and was thus too indefinite and uncertain to support specific performance. Land Improvement also argues that the court below erred in amending the judgment because defendants had not waived specific performance and that the court erred in determining their damages. These later two points will not be addressed as they are not in compliance with Rule 84.04(d) and (e) in that although the arguments state the "wherein" they do not state the "why" merely citing a few cases as authority at the end of their argument with no effort made to show how they are applicable. Ferguson and Isley, in the cross-appeal, argue that the trial court erred in: (1) finding that the party abandoned the contract whereby Land Improvement was to procure acreage for Ferguson and Isley in exchange for land; and (2) not entering judgment for Ferguson and Isley on the counterclaim in the amount of $221,000.

In June, 1988, John Ferguson and Jack Isley were members of a partnership known as 291/33 Investors. The partnership owned 25.57 acres of land located in Liberty, Missouri, acquired for the purpose of development for industrial and commercial use. The defendants determined that "dirt work" needed to be done on the property and entered into discussions with William L. Larkin, the president of Land Improvement, Inc. Larkin testified that, "I said that it looked like it was about a $90,000 job and that we would be interested in doing it either for the money or for a parcel of land." This parcel, two and one-half acres, was described by Larkin as "bounded on the east by the railroad right-of-way and it was just going to be in the

area across the creek which joined the railroad." The parties agreed to this orally. Nothing was written down. This agreement and all subsequent agreements were oral. The land was to be conveyed to plaintiff when the work was done.

In August, 1988, Land Improvement presented Ferguson and Isley with a bill for $100,000 although the work had not been completed. This bill was drawn for the purpose of turning the bill into the bank so that Larkin could draw upon his credit line at the bank by treating it as an account receivable. The bank was aware that the transaction was one involving land for services.

The parties also agreed that $10,000 worth of additional work on the land was needed and this work was performed by plaintiff. A further oral agreement was entered into by the parties. In this agreement Larkin was to act as a "straw man" for the purpose of acquiring a tract of land which bounded on the south of defendants' acreage, a tract referred to as the "Wymore property." Wymore, the owner of this property refused to sell it to Ferguson and Isley. In return for acting as a straw man, Larkin's acreage would be increased to three and one-half acres. The three and one-half acres agreed to were the same as the two and one-half agreed upon except the property now included a creek. Larkin prepared a sketch of the property.

Larkin entered into a contract with Wymore for the purchase of the "Wymore property," obtaining a title commitment. He paid $1,000 down. The total purchase price was to be $30,000. The defendants never tendered the $1,000 down payment nor the balance of $29,000 to Larkin. At the October 11, 1988, closing the property was bought instead by Larkin's banker Ed Merrifield. At a meeting between the parties the morning of the closing, Larkin testified that after talking about various deals and trades, "at the end of the meeting as far as I knew nothing had happened."

Although Larkin had not acquired the property for the partnership, the partnership did offer to convey the original two and one-half acres when the original work agreed on was completed. The work was never fully completed as there was more work to be done around a gas line which had not been lowered by the gas company.

Land Improvement filed a three count petition for damages against Ferguson and Isley claiming breach of contract and fraud and sought recovery in quantum meruit. Ferguson and Isley counterclaimed seeking specific performance, asserting a breach of contract and claiming fraud.

The trial court found an express oral contract; a "land-for-services contract." The oral agreement to buy the Wymore property was found to have been abandoned by the parties. Under the theory of quantum meruit, the court found, "that the plaintiff is entitled to receive $74,272.00 for the work performed plus $9,500.00 for additional work done and not paid for, for a total of $83,772.00." The court offset this figure by $6,280, the amount it found for defendants on their breach of contract claim as plaintiff had not performed all of the work. The original judgment, therefore, was a money judgment in the amount of $77,492. The trial court amended its original judgment finding that the defendants did not waive specific performance of the original land for services contract. The money judgment of $77,492 was withdrawn and the court ordered defendants to convey the "two and one-half acres of the land in question, as previously agreed to in the original contract" to the plaintiff. The court offset the $9,500 owed to plaintiff for the additional work that was done by the $6,280 for the value of the work not completed by plaintiff. This left a money judgment of $3,220. Both sides appeal.

## I. The Land Improvement Appeal

Land Improvement's argument on appeal, although confusing and difficult to follow as presented by its briefs, basically can be restated as two issues: (1) whether the trial court erred in amending the money judgment because specific performance was not pled by either plaintiff or defendants and the judgment failed to identify the acres to be transferred; and (2) wheth-

er the trial court erred in granting specific performance because defendants did not perform their portion of the original contract as late as November 2, 1988, and they had no legal description of the acreage they intended to convey and the lack of such description made the contract too indefinite and uncertain to support specific performance. This case was tried by the court and is thus subject to the familiar rule outlined in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Thus, the judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

Initially, it must be noted that defendants certainly *did* claim that specific performance was the proper remedy if Land Improvement was entitled to relief. Land Improvement itself, in both the opening statement and closing argument indicated as much. After discussing the various agreements between the parties, counsel for Land Improvement in his opening statement stated, "So at the conclusion of this matter, it's the plaintiff's contention that he's owed either three and a half acres, or he's owed $100,000." Similarly, in closing counsel argued that, "I think the evidence was that he's entitled either to—uncontradicted evidence—he's either entitled to two to two and a half acres or 3.5 acres...." On direct examination counsel for Land Improvement developed Larkin's testimony about the agreement and the acreage in question. For all intents and purposes the issue of specific performance can be deemed as tried by consent. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated as if they had been raised in the pleadings." *Evinger v. McDaniel Title Co.*, 726 S.W.2d 468, 473. *See also* Rule 55.33(b). Thus, appellant Land Improvement's argument must fail.

▬ Land Improvement's arguments as to specificity in the contract and in the judgment are also without merit. For specific performance to be granted in regard to property a technical, legal description is not a strict necessity. The contract in question must either designate or describe the land with accuracy and certainty or provide a way for the identification of that land to be perfected by parol evidence. *Williamson v. Burnett*, 345 S.W.2d 80, 82 (Mo.1961). In *Williamson* the buyer and seller orally agreed upon the sale of a one-acre square of land to be located within a twelve-acre tract. This contract was for, "a tract square in shape, beginning at a cherry tree located in the fence line on the east line of seller's 12–acre tract ... 'going one acre south and from the fence back' one acre west." *Id.* at 82. The court upheld the contract as adequate, finding that the description was enough to enable a competent surveyor to find and identify the land in question. *Id.* at 83. The description of the land given at trial was certainly sufficient for contractual purposes. *See also Blankenship v. Porter*, 479 S.W.2d 409, 412–13 (Mo.1972). Larkin, on direct examination, testified:

Q. Did you have a specific parcel of land in mind at that time before the work was started?

A. Well, we talked about a parcel back on the back here—

Q. Well, when you say "back on the back" is that near the railroad track?

A. On the east side of the property near the railroad.

Q. All right. Now, how much land were you talking about in exchange for your work?

A. Two and a half acres.

Q. And that was bounded by what, the north boundary of the property, or what?

A. Not necessarily. It was bounded on the east by the railroad right-of-way and it was just going to be in this area across the creek which joined the railroad.

Q. All right, now, after that you started work on the project; is that right?

A. Yes.

Q. I'll hand you what's been marked as Plaintiff's Exhibit No. 2 and can you tell me what that is?

A. This is an aerial photograph of the property which shows the property before any work was done.

Q. And what's the yellow markings there? Is that the property involved?

A. Yes.

Additional information was also provided by the sketch made by Larkin when the agreement was modified from two and one-half acres to three and one-half acres. The extra acreage was to include a creek. In short, there is a sufficient identification of the land for a competent surveyor to use in providing a legal description of the two and one-half acres awarded in the judgment.

■ Land Improvement's argument that defendants did not tender performance and were therefore somehow barred from specific performance as a remedy is also without merit. Ferguson and Isley did tender performance in November of 1988 by offering to have the land platted and conveyed as soon as Land Improvement finished the work it contracted to do for the partnership. This tender is sufficient to satisfy requirements for specific performance. *See Crow v. Bertram*, 725 S.W.2d 634, 636 (Mo.App.1987).

As mentioned earlier in this opinion we do not address Land Improvement's Points III and IV as they are violative of Rule 84.04.

As sufficient identification of the acreage in question existed for a surveyor to provide a legal description the case is therefore remanded and the trial court instructed to take additional evidence in order to amend the judgment to specifically describe the two and one-half acres to be conveyed.

## II. The Ferguson and Isley Appeal

■ Cross-appellants, Ferguson and Isley argue that the trial court erred in finding that the parties abandoned the contract in which Land Improvement was to procure the Wymore Tract for Ferguson and Isley in return for three and one-half acres. Cross-appellants further argue that the trial court erred in not entering judgment on their counterclaims as the evidence established an agreement to acquire the Wymore Tract which was breached by Land Improvement. Again, the standard by which we review these claims is governed by *Murphy v. Carron, supra.* Specifically, in its judgment of November 20, 1989, the trial court found in regard to the Wymore Tract dispute that:

At a meeting between the parties on October 11, 1988, there was a disagreement as to which contracts were in effect and at best it can be stated that there was no meeting of the minds between the parties with the exception that when the parties left they had agreed that the original contract was in effect. This is further evidenced by the statements and actions of both parties subsequent thereto. This meeting and final agreement resulted in an abandonment of all contractual agreements between the parties except for the original contract.

■ Appellant argues that as a matter of law there could have been no abandonment of this contract as abandonment of a contract requires a meeting of the minds. *Pitcairn v. American Refrigerator Transit Co.*, 101 F.2d 929, 933 (8th Cir.1939); *Phillips Petroleum Co. v. Rau Const. Co.*, 130 F.2d 499, 502 (8th Cir.1942). The evidence of abandonment must be clear and decisive. *Crow v. Bertram, supra*, 725 S.W.2d at 637. Abandonment can be shown by acts and conduct consistent with the intent to abandon. *Id.* Conduct which raises the issue of whether or not an intent to abandon existed is not destroyed by testimony that the person did not intend to abandon the contract as it is the prerogative of the trial court to determine credibility of a witness, accepting testimony or rejecting testimony even if uncontradicted. *Flath v. Bauman*, 722 S.W.2d 125, 129 (Mo.App.1986).

In the instant case the original agreement for the Wymore Tract was for Land Improvement to perform the function of a straw man in return for increased acreage. Larkin, however, attempted to change the deal and negotiations were entered into between the parties. Ed Merrifield was present at the meeting and reported in his testimony that none of the parties could agree upon what the agreement was. Indeed, the oral agreements between the parties changed so often, it is not surprising that confusion existed as to what was agreed upon and when. There exists some

evidence in the record that Ferguson and Isley did deem the contract abandoned. Jeffery Reese, an employer of the Clay County Title Corporation, testified that in his conversations with Ferguson, Ferguson was not at all surprised that the property had closed in Merrifield's name. This coupled with the failed negotiations between the parties at the October meeting are consistent with abandonment and it cannot be said that the trial court abused its discretion. Cross–Appellants' Point I is denied. In Point II the cross-appellants claim that judgment should have entered on their cross-claims. As the trial court did not clearly err in finding that the contract in question had been abandoned there can be no damages for the alleged breach of this abandoned contract. Point II is denied.

Accordingly, on Land Improvement's appeal we affirm the judgment of the trial court but remand for a specific description of the two and one-half acres entered into the record. On Ferguson and Isley's cross-appeal we affirm the judgment of the trial court denying relief on their counter-claim.

All concur.